**Emminger v.
Motion Savers, Inc.**
*[Cite as 5 AOA 15]*

*Case No. C-890272*
*Hamilton County, (1st)*
*Decided July 18, 1990*

Robert K. Roeller, Esq., and Cathy R. Cook, Esq., Roeller, Roeller & Jameson, 704 Provident Bank Building, 632 Vine Street, Cincinnati, Ohio 45202, for Plaintiff-Appellant.

Dana E. Deering, Esq., and Troy W. Skeens, Jr., Esq., Robinson, Arnsen, Parry & Wentz, 600 Greenup Street, P. O. Box 472, Covington, Kentucky 41012-0472, for Defendant-Appellee, In Motion, Inc.

Bloom & Greene Co., L.P.A., and Nancy J. Gill, Esq., 2000 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Defendants-Appellees, Bishopric, Inc., Bishopric Products Company, and Enerfab Corporation.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the briefs, the arguments of counsel, and the assignments of error.

Plaintiff-appellant, Ray Emminger, Sr., the administrator of the estate of Michael Ray Emminger (Emminger), appeals from the trial court's order granting a motion for summary judgment in favor of In Motion, Inc., (Motion, Inc.), Emminger's employer, on his wrongful-death claim, and in favor of Bishopric, Inc., Bishopric Products Company, and Enerfab Corporation (Bishopric), the owner of the premises on which Emminger sustained his injury, on his negligence claim. In his two assignments of error plaintiff contends that genuine issues of material fact exist as to both (1) his wrongful-death claim arising from an intentional tort allegedly committed by Emminger's employer, and (2) his claim for negligence against the premises owner. We find that the first assignment of error, relating to plaintiff's alleged intentional-tort claim against Motion, Inc., is well taken, but we overrule the second assignment of error relating to Bishopric.

Motion, Inc., is engaged in the business of repairing cranes and, pursuant to a contract with Bishopric, was working at Bishopric's plant in Cincinnati. Michael Emminger, an eighteen-year-old co-op student from Cincinnati Technical College, had been employed for three and one-half weeks by Motion, Inc. His supervisor, Mark Beer, assigned him to work on a crane needing a brake removed and replaced. Emminger, Beer, and a third employee ascended on a lift platform to an I-beam forty feet above the plant floor. To reach the crane and begin his assigned job, Emminger walked across the I-beam for a distance of ten feet without a safety belt, a safety line or a safety net. Beer and the other employee then descended to the floor and resumed working approximately fifty to sixty feet from Emminger. An hour or so later Beer heard a noise that sounded to him like a tool falling. He then discovered that Emminger had fallen to the floor, sustaining injuries from which he later died.

Emminger's administrator filed a death claim with Kentucky's Workers' Compensation Board because Emminger was a Kentucky resident hired in Kentucky by Motion, Inc., a Kentucky corporation. On March 4, 1986, Emminger's death claim was settled and approved. subsequently, the administrator filed his complaint against Motion, Inc. and Bishopric in the Hamilton County Court of Common Pleas.

In his first assignment of error plaintiff argues that, unlike Ohio employers, Motion, Inc. is not immune from civil actions because it did not contribute to the Ohio workers' compensation system. He maintains that the exclusive-remedy limitation of workers' compensation benefits under Section 2, Article 35 of the Ohio Constitution and R.C. 4123.74 applies solely to complying employers. This argument has no validity. Although it does not pay into the Ohio workers' compensation fund, Motion, Inc., which is insured under the Kentucky workers' compensation system, is entitled expressly under R.C. 4123.54 to immunity from civil claims, other than intentional torts, while working in Ohio, if the employee is also a resident of Kentucky. Therefore, plaintiff's argument regarding the wrongful-death claim founded in negligence is not well taken.

Because plaintiff filed his complaint before the enactment of R.C. 4121.80(G), his intentional-tort claim against Motion, Inc. is governed by common law rather than by the statute. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489. Ohio has adopted the common-law definition of an intentional tort set forth in Restatement of the Law 2d, Torts (1965). Under this standard, an intentional tort results when "*** the actor desires to cause the consequences of his act, or *** he believes that the consequences are substantially certain to result

from it." 1 Restatement of the Law 2d, Torts (1965), 15, Section 8A; *Van Fossen v. Babcock & Wilcox Co.*, supra, paragraphs five and six of the syllabus; *Jones v. VIP Development Co.* (1984), 15 Ohio St. 3d 90, 95, 472 N.E.2d 1046, 1051. This definition focuses on two different levels of intent:

"(1) where the actor's conduct achieves the exact result desired, and

"(2) where the actor believes his conduct is substantially certain to cause a particular result even if it is not desired." *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St. 3d 173, 175, 551 N.E.2d 962, 964. When, as here, an employee's claim depends upon proof of "substantial certainty" for purposes of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed. 1984), the following criteria are essential to demonstrate the employer's requisite intent:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation;

"(2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk;

"(3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment tasks." *Van Fossen, supra*, at 116, 522 N.E.2d at 504.

The effect of this three-tier test is to modify *Jones v. VIP Development Co.*, supra, and to serve as "significantly limiting the areas within which 'intent' on the part of the actor may be circumstantially *inferred."* *Van Fossen, supra*, at 117, 522 N.E.2d at 504.

"There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' and therefore an exception, under *Blankenship or Jones*, to the exclusivity of the Act." *Van Fossen, supra*, at 117, 522 N.E. 2d at 504-5.

While this language may suggest that the Supreme Court has in reality eliminated an employee's claim for an intentional tort, absent evidence of the employer's actual intent to injure, *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 139, 522 N.E.2d 477, 481, which was decided the same day as *Van Fossen*, states that an intentional tort "emerges not so much from the words used to formulate the [*Van Fossen*] test as it does from the decisions rendered in response to specific fact situations." See *Sanek v. Duracote Corp.* (1989), 43 Ohio St. 3d 169, 539 N.E.2d 1114. Proof of the employer's intent in the second category is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee as required by Civ. R. 56, the proof of the employer's intent must still be more than negligence or recklessness. Under the case-by-case review announced in *Kunkler*, the affidavits, depositions, and exhibits must create an inference that the employer acted "despite a known threat that harm to an employee is substantially certain to occur." *Kunkler Goodyear Tire & Rubber Co., supra*, at 139, 522 N.E.2d at 481. Comment b to Section 8A of 1 Restatement of the Law 2d, Torts (1965), 15, states:

"*** If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in §500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in §282. All three have their important place in the law of torts, but the liability attached to them will differ." See, also, *Prosser & Keeton*, Law of Torts (5 Ed. 1984) 35, Section 8.

Motion, Inc. does not dispute that it violated Ohio Adm. Code 4121:1-3-03, which mandates the use of safety belts and lines where the hazard of an employee's falling more than fifteen feet exists. Neither does it dispute that it was cited by OSHA for this violation or contend that Emminger violated the employer's safety protocol.[1] Charlie Adams, co-owner of Motion, Inc., in his affidavit stated, however, that Motion, Inc. was unaware of OSHA's regulation. He stated that

the custom of employers in the industry is not to require employees working on cranes to wear safety belts or lines. His affidavit is contradicted by the affidavits of Matt Milton and Herb Horn, employees of Ohio Crane and Hoist Co., where Adams worked in the early 1980's. Both stated that Adams regularly wore safety belts when he worked on cranes at Ohio Crane and Hoist Co. They stated that the OSHA regulation is the industry standard, which Adams knew. The record also confirms that certain companies that hired Motion, Inc. required its employees to wear safety lines when working on cranes. Milton stated that Adams's reputation in the industry is to use inexperienced and untrained young persons in working at heights. To add to these observations, plaintiff's industrial safety expert, in his affidavit and deposition, was of the opinion that the combination of Motion, Inc.'s failure to use a life line or safety net, its failure to develop a safety program for its employees, and its use of an untrained, inexperienced employee to work at that height on a crane without supervision was tantamount to a willful violation of the OSHA regulations.

Motion, Inc. maintains that substantial certainty means virtual certainty, and that Emminger's fall was not a virtual certainty at the time of the accident. However, the test is not whether the employer knows that the very event will occur at a precise time. The test is whether the employer knows "that the consequences are certain or substantially certain to result from his act and still goes ahead *** ." *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St. 3d 124, 128, 522 N.E.2d 511, 515. Although an employer, without safety controls, may not be virtually certain that a particular employee will fall from a crane on a given date, it is reasonable to infer that an employer should have knowledge that if an employee falls from a height of forty feet, serious injury is a virtual certainty when the employee does not have a lifeline as required by OSHA.[2] We hold that the evidence presented by plaintiff satisfies the three-tier test of *Van Fossen* for purposes of opposing summary judgment, when bolstered by the following excerpt from the deposition of plaintiff's industrial-safety expert:

"*** In Motion had no form of safety program. They regularly worked at heights. They had been told about wearing safety equipment by other contractors, or other clients, excuse me. And then they went right along doing their business without requiring fall protection. In my judgment, that is pretty close to willful."

While the evidence submitted by the parties is contradictory, the affidavits, depositions and exhibits raise genuine issues of material fact upon which reasonable minds can come to different conclusions as to whether Motion, Inc.'s conduct was intentional when examined under the standards for intentional-tort claims provided in the sixth paragraph of the syllabus to *Van Fossen*:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent." (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572; and *Jones v. VIP Development Co.* [1984], 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, explained).

Plaintiff's first assignment of error is sustained in part.

In his second assignment of error, plaintiff alleges that genuine issues of material fact exist as to his claim against Bishopric. The parties agree that Motion, Inc. was an independent contractor. Plaintiff maintains that Bishopric exercised control over Motion, Inc.'s employees because Bishopric designated the cranes to be repaired and the times for the work, its plant manager supervised Motion, Inc.'s employees, it permitted Motion, Inc.'s employees to use its lift and tools at their convenience, and it required Motion, Inc.'s employees to wear hard hats.

Under Ohio law, the owner of premises owes no duty to employees of an independent contractor injured on its premises where the performance of the work involves an inherent danger unless the owner:

"(1) has superior knowledge of the danger which the independent contractor lacks, *Eicher v. United States Steel Corp.* (1987), 32 Ohio St. 3d 248, 512 N.E.2d 1165, or

"(2) actually participates in the job operation. *Hirschbach v. Cincinnati Gas & Electric Company* (1983), 6 Ohio St. 3d 206, 452 N.E.2d 326."

Plaintiff's evidence fails with respect to both exceptions. First, there is no evidence that Bishopric's knowledge of the danger was greater than the knowledge of Motion, Inc. As to the second exception, evidence of the premises owner's supervision to assure compliance with job specifications, its concern for safety, and the use of its tools by the independent contractor's employees are not acts that individually or collectively render the premises owner liable on grounds that it directed or interfered with the independent contractor's work. *Cafferkey v. Turner Construction Co.* (1986), 21 Ohio St. 3d 110, 488 N.E.2d 189. Therefore, the record fails to demonstrate the degree of Bishopric's participation necessary to create a duty to employees of Motion, Inc., the independent contractor.

The second assignment of error is overruled.

The trial court's judgment is reversed only with respect to the intentional-tort claim asserted against Motion, Inc., and this cause is remanded to the trial court for further proceedings consistent with law and this decision on that one claim only. In all other respects, the trial court's judgment is affirmed.

*Judgments affirmed in part,*
*reversed in part,*
*and cause remanded.*

UTZ, P.J., HILDEBRANDT and GORMAN, J.J.

---

[1] When the employee's injury or death results because he or she violated the employer's written safety procedures, a second-category intentional tort is not established since the employer cannot be expected to anticipate the employee's misconduct. *Sanek v. Duracote Corp.*, supra.

[2] Cf. *Witzgall v. Fenton Rigging Co.* (Jun. 29, 1988), Hamilton App. No. C-870365, unreported, in which the foreman placed himself in the same risk as he placed the worker at the time when the intervening weight of a third worker broke the equilibrium of the scaffolding that caused the fall.