In this appeal from a judgment of the Lucas County Court of Common Pleas, we are asked to determine whether the trial court erred in granting summary judgment to defendant-appellee, Cargill, Inc.("Cargill"). Appellant, Michael P. Clark, asserts the following assignment of error:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED APPELLEE'S SUMMARY JUDGMENT MOTION BECAUSE REASONABLE MINDS COULD CONCLUDE THAT APPELLEE COMMITTED A WORKPLACE INTENTIONAL TORT AGAINST APPELLANT."
Cargill is a grain facility located in Toledo, Lucas County, Ohio. Appellant started working for Cargill in September 1996. In December 1996, he was assigned to loading grain into railroad cars. Prior to commencing this position, he was required to attend two classes in railroad car safety, including safety during the loading/unloading procedure.
The process used by Cargill in loading or unloading grain is as follows. Initially, the railroad cars to be, in this case, loaded are pulled toward the loading shed by a locomotive. The locomotive is detached from the first car and driven away. Then, a hydraulic system built into the tracks, called a "car mover", pushes each car in a north to south direction into the loading shed. The car mover assembly is called the "pusher dog." In order to move the cars forward, the pusher dog pushes, by means of four Y-shaped cylinders called "dog ears," on the truck assembly on which the railroad car's wheels are mounted. If something, for example, a leaking railroad car, requires Cargill employees to move the car backward to the loading shed in order to correct the problem, the pusher dog must be placed into a lowered position and pinned with a metal pin so that the pusher dog will not be sheared off or damaged by the railroad car.
Originally, the hydraulic pushing system used by Cargill was equipped with "dog operating wheels" that kept the pusher dog retracted unless the rear truck assembly was directly over the pusher dog assembly. Nonetheless, unless manually pushed down about one inch to three inches and manually "pinned down," a pusher dog would "pop up" when the railroad car was moved backwards thereby damaging the pusher dog.
After several years of use, three of the dog operating wheels were permanently in the down position. Cargill decided to weld the fourth wheel in the down position so that its employees could manually place and pin the pusher dog when necessary. When the dog wheels remained in the down position, the employee was required to push the dog down about six inches before pinning rather than pushing the dog down one to three inches before pinning.
It is undisputed that appellant had "pinned down the dog" at least fifty to seventy-five times before he was injured and was told to maintain a distance of five feet between a railroad car's truck assembly and a pusher dog before attempting to pin the dog down.
On February 5, 1997, Cargill employees noticed leakage from the last railroad car in a line of seven cars just loaded with grain. This necessitated moving that car backward into the loading shed to correct the problem. Appellant was told to "pin the dog down" on the east side of the track. At that time the mover assembly was in contact with the truck assembly of the railroad car. Another employee, Mike Kaseman, used the controls on his side of the track to move the pusher dog back four to five feet. Appellant admitted, however, that this was "close clearance" in which to pin down the car mover assembly. Appellant described the next sequence of events as follows:
 "I had put my [right] foot on the dog to push it down, and when I reached for the pin, I noticed that the train car was moving backwards, and when I tried to get my foot off of there, it was too late, it was wet inside here [from snow and soybeans] and I slipped on some beans, my boot was kind of messy, and it got stuck in that dog and the train backed over it."
Appellant's foot and ankle were severely injured.
Undisputed testimony disclosed that it was Cargill's practice, at the time of the accident, to engage only the brake on the lead car in a string of railroad cars to be loaded with grain. Thus, it was believed that the "play" in the couplings plus a slight downhill grade in terrain allowed the last six railroad cars to roll backwards. Appellant stated that he had seen cars roll back before. It is also undisputed that appellant received safety training concerning snow and ice in work areas and was advised to report such hazards to management to avoid injuries. This was the first accident of this type that ever occurred at the Cargill grain loading/unloading facility.
Appellant subsequently filed the instant action against Cargill asserting that Cargill committed an employer intentional tort and that the "Employer's Liability for Intentional Tort" statute, R.C. 2745.01 was, to the extent that it applied to this case, unconstitutional.
Cargill answered. Following a period of discovery, Cargill moved for summary judgment[1] on the merits of appellant's claim. Cargill argued that it was entitled to summary judgment under R.C. 2745.01 and under the common law governing the determination of the existence of an employer intentional tort. In opposition, appellant contended that R.C. 2745.01 is unconstitutional. Appellant further argued that under the common law Cargill subjected appellant to a dangerous condition by forcing him to manually lower and pin the pusher dog, was substantially certain that appellant would be harmed by this condition and forced him to continue to be exposed to this condition despite Cargill's knowledge and certainty of harm.
On June 18, 1998, the trial court granted Cargill's motion for summary judgment. The trial court determined that R.C.2745.01 was constitutional. However, the court also held that, even under the common law, Cargill was entitled to summary judgment as a matter of law.
The standard applicable to the case at bar is found in Civ.R. 56. Civ.R. 56(C) provides for the granting of summary judgment when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Id.
On appeal, appellant first argues that the trial court erred as a matter of law when it applied R.C. 2745.01 to this case because that statute is unconstitutional.
The trial court also granted Cargill's motion for summary judgment based on the common law controlling employer intentional tort. Because we can decide this case on that basis, we need not consider the constitutional issue raised by appellant. See In re Miller (1992), 63 Ohio St.3d 99, 110; Inre Boggs (1990), 50 Ohio St.3d 217, 221; Willoughby v. AK SteelCorp. (Jan. 11, 1999), Butler App. No. CA98-02-040, unreported.
In Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, the Supreme Court of Ohio set forth the law of employer intentional tort as it exists under the common law. In order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate:
 "* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc., 59 Ohio St.3d at paragraph one of the syllabus.
In setting forth the proof required to establish intent, theFyffe court held that a plaintiff must demonstrate proof of these elements "beyond that required to prove negligence and beyond that to prove recklessness * * *. The mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent." Id. at paragraph two of the syllabus. Rather, it must be shown that the probability of certain consequences is such that the "employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds * * *." Id. Only in these circumstances, will intent be inferred from the employer's knowledge of all the facts and circumstances which create the risk. Emminger v. Motion Savers,Inc. (1990), 60 Ohio App.3d 14, 16-17.
Accordingly, to withstand a motion for summary judgment, an injured employee must set forth specific facts that raise a genuine issue as to each part of the Fyffe three prong test.Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
Based on the facts before the court, we must find that, at the least, questions of fact exist as to whether the pinning down of a pusher dog is a dangerous process and that Cargill knew this was a dangerous process. Nevertheless, appellant failed to offer specific facts to create a question of fact on the issue of whether Cargill knew that an employee was substantially certain to be harmed if required to perform this process.
Appellant asserts that not repairing the three disabled dog wheels and welding down the fourth was equivalent to the removal of a safety device because it forced Cargill employees to use their foot to push down the dog. There is nothing in the record of this case to suggest that the dog wheels were a safety device. Further, Cargill employees were required to use their feet to push down on the pusher dog both before and after the dog wheels were rendered inoperable. Finally, when a railroad car moves backward toward a pusher dog, the employee is required to place his or her limbs in the danger zone to pin down the dog. Thus, the employee is subjected to the same process regardless of whether the dog wheels completely retract the pusher dog or not.
Assuming, arguendo, that the failure to repair the dog wheels was the same as removing a safety guard, that fact alone is insufficient to create a question of fact on the issue of the employer's intent. The deliberate removal of a safety guard is but one of many facts to be weighed in considering a motion of summary judgment in an employer intentional tort case.
Fyffe v. Jeno's, Inc., 59 Ohio St.3d at 119. In considering all the facts and circumstances of this case, the evidence offered failed to create a question of fact on whether Cargill was substantially certain that an employee would be injured during the pinning process. The company had specific safety procedures and trained their employees in these procedures. No employee at Cargill, until appellant, was ever injured while pushing down on a dog. While the failure to repair the dog wheels may have been negligent, that negligence does not rise to the substantial certainty required by Fyffe. Accordingly, reasonable minds could only conclude that Cargill did not know that injury was substantially certain to result from the use of one's foot to push down a pusher dog. Thus, the trial court did not err in granting summary judgment to Cargill as a matter of law.
Appellant's sole assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ------------------------- JUDGE
Melvin L. Resnick, J. ------------------------- JUDGE James R. Sherck, J. CONCUR. ------------------------- JUDGE
[1] Cargill's motion and appellant's memorandum in opposition were supported by affidavits, depositions and other documents. However, only part of the deposition of Louis R. Peltier, Superintendent of the Toledo Cargill grain facility, was ever filed in this case.