OPINION
In the following accelerated calendar appeal, appellants, Edward E. Smolnik, Jr. ("Smolnik") and Barbara Smolnik (collectively referred to as "appellants"), appeal from a decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Diamond Steel Construction Company, Inc., ("Diamond Construction"), in an employer intentional tort action. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. On April 23, 1995, Smolnik was employed by Diamond Construction as a welder who was assigned to a job at a mill operated by WCI Steel, Inc. ("WCI Steel") and located in Warren, Ohio. WCI Steel hired Diamond Construction as an independent contractor to strengthen the of the mill by welding iron columns to the inside of the plant.
In order to reach the area where he was to perform his welding duties for the day, Smolnik ascended a permanent set of stairs which led to a platform located approximately 28 feet above the floor of the mill. This platform, abutting a wall the entire length of the mill, was a permanent part of the WCI Steel's plant and was used to give WCI Steel's crane operators ingress and egress to and from machinery utilized in the steel-making process. The platform was made of a grating type material, was approximately 6 feet wide and was completely open without a guardrail or other safety device on the side of the platform opposite the wall.
From his position on the platform, Smolnik then placed a twelve-rung ladder on the platform to ascend to the area where he was to perform his welding duties. As appellant placed one foot on the ladder he noticed that some dirt, knocked loose from some of his fellow employees working above him, began to fall in the area where his ladder was placed. Smolnik attempted to turn out of the way of the falling dirt and stepped off the platform where he fell 28 feet to the floor below. As a result of this fall, Smolnik sustained serious injuries.
On January 22, 1997, Smolnik filed an employer intentional tort action against Diamond Construction. Smolnik's wife, Barbara, also asserted a derivative claim for loss of consortium based on the injuries suffered by her husband. Diamond Construction filed an answer to the complaint on February 13, 1997, and the parties began extensive discovery.
During the discovery process, Diamond Construction took Smolnik's deposition. At deposition, Smolnik gave his account of the circumstances surrounding his fall. He acknowledged that he was an employee of Diamond Construction at the time of the accident and that WCI Steel had suspended all operations at the plant until the construction project was completed and that he otherwise had no contact with any WCI Steel personnel. He further acknowledged that he was aware that the structure used within the WCI Steel mill was filled with dirt and noted that the platform he utilized to arrive at his work station on April 23, 1997 was without a guardrail. He described the moments leading up to his fall from the platform as follows:
 "Well, when I started up [the ladder], I looked up; and that is when I saw the dirt coming down, and I got hit with dirt before and I knew I'm not getting hit with this dirt again. It's just too dirty. I'm getting out of the way because it just keeps coming down and like avalanches down. I said, I'm getting out of the way. That's when I turned, and then I went to — just basically I forgot I was on a platform, I guess, and I just turned and stepped and walked right off [the platform]."
Smolnik further described his training and experiences as a journeyman ironworker that included traversing I-beams as high as 130 feet off the ground from which to reach a work area. He acknowledged that ironworkers are primarily responsible for their own safety and described some of the safety measures provided to him, including a safety belt and lanyard, designed to prevent a fall by attaching a worker to a solid object. However, Smolnik testified that he was unable to take advantage of these safety devices because he was in transit to his work area. He further noted that he was not cited for violating any safety violations as a result of this accident.
Although Smolnik acknowledged that an ironworker is primarily responsible for his or her own safety, he testified that he spoke with a co-worker as well as some unidentified "guy in the union hall" who told him that a safety cable had been placed on the platform during prior jobs at the WCI Steel mill, a cable that was not present when Smolnik fell from the same platform. Smolnik testified that he also had seen the use of safety cables at other projects. However, Smolnik indicated that he never informed Diamond Construction of the need for such cable in this case because the platform was not his primary work area. When asked if Diamond Construction would have prevented him from attaching a safety cable to the platform, Smolnik responded that he "was not going to tell [his] boss what to do" and that he "wouldn't be around if [he] did."
On January 6, 1998, Diamond Construction filed a motion for summary judgment claiming that it did not commit an employer intentional tort against its employees. Appellants subsequently filed a brief in opposition to Diamond Construction's motion for summary judgment. Both parties relied almost exclusively upon the deposition testimony of Smolnik in support of their respective positions. Diamond Construction also submitted "safety sheets," either seen by Smolnik or containing his signature, with respect to the dangerousness of his job and the requirement that he use protective gear wherever there was the potential for a fall.
By judgment entry filed April 20, 1998, the trial court granted the motion for summary judgment citing Smolnik's inability to submit evidence that Diamond Construction required its employees to perform a dangerous task that it knew was substantially certain to cause harm. Consequently, the trial court determined that while Diamond Construction may have been negligent or perhaps reckless in failing to place a safety cable on the platform where the fall occurred, Smolnik failed to provide evidence of the necessary "intent" to establish an employer intentional tort. From this judgment, appellants filed a timely notice of appeal and now assert, in their sole assignment of error, that the trial court erred in granting summary judgment in favor of Diamond Construction.
Civ.R. 56(C), providing the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morrisv. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support tje nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
Smolnik was injured at work. It is axiomatic that the remedy for those injured on the job in Ohio lies almost exclusively within the Workers' Compensation framework. There are exceptions, however, to that rule. One exception is where the employer has committed an intentional tort that has resulted in injury to an employee.
The standard for proving an employer intentional tort was set forth by the Supreme Court of Ohio in Fyffe v. Jeno's (1991),59 Ohio St.3d 115, as follows:
 "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *" (Citations omitted.) Id. at paragraph one of the syllabus.
Additionally, the Supreme Court of Ohio held as follows:
 "* * * To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. * * *" (Citations omitted.) Id. at paragraph two of the syllabus.
We begin our analysis of appellant's assignment of error with the first prong of the Fyffe test, which requires evidence that the employer knew of the existence of a dangerous process, procedure, instrumentality, or condition within its business operations. In the present case, the risks associated with construction workers negotiating I-beams or other ungarded walkways are self-evident. Both the employer and employee know that the one false step on a construction site can be fatal and Smolnik referenced some of the materials attached to Diamond Construction's motion for summary judgment as acknowledging this risk. This recognized danger is sufficient to meet appellants' burden to survive a summary judgment as to the first prong of the Fyffe test.
Despite appellants' ability to establish, for purposes of summary judgment, that Diamond Construction was on notice of a dangerous condition within its operation, the trial court determined that reasonable minds could not differ as to the second and third prongs of the standard to be applied with respect to establishing an intentional tort. The critical issue is whether Diamond Construction knew that the dangerous condition within its operation was substantially certain to cause harm to an employee and yet still required the employee to perform the dangerous task. For the reasons that follow, we agree with the trial court's assessment that appellants failed to meet his burden with respect to the second and third prongs of the Fyffe
tests.
As to the second prong of the Fyffe test, the court inEmminger v. Motion Savers, Inc. (1990), 60 Ohio App.3d 14, 17, held as follows:
 "Proof of the employer's intent in the second category is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee as required by Civ.R. 56, the proof of the employer's intent must still be more than negligence or recklessness."
As to this critical issue, Appellants again cited to the safety warnings Diamond Construction provided its employees as well as the "evidence" regarding its prior use of safety cables for construction jobs at the WCI Steel mill. Aside from the fact that we severely question the evidentiary value of a statement attributed to a co-worker and some unidentified "guy in the union hall" as to Diamond Construction's past work at WCI Steel, there is absolutely no evidence to establish the employers' knowledge of the substantial certainty of harm that would occur in the present case from the unguarded platform. An area, as Smolnik acknowledged, that was not his primary work area.
Finally, we consider whether Smolnik presented evidence creating a genuine issue of material fact as to whether Diamond Construction, knowing of a dangerous condition and of the substantial certainty for harm, required him to continue to perform a dangerous task. Although Smolnik stated that iron workers primarily responsible for their own safety, he also made the assertion that he would not tell his boss what to do and expressed his belief that he would lose his job if he did tell his boss what to do. Even if we accept this statement as true and infer some fear on the part of employees regarding job security, we recognize that there is a difference between "telling" your employer what to do and providing an employer with information regarding an unsafe condition at a plant. The fact remains, however, that there was absolutely no no evidence to establish that Diamond Construction was on notice of an unsafe condition that was substantially certain to cause its employees harm.
Based on the foregoing, there is no genuine issue of material fact as to whether Diamond Construction required Smolnik to perform a dangerous task that it knew was substantially certain to cause injury. Consequently, as appellant failed to establish the second and third prongs of the Fyffe test from which to establish an employer intentional tort, the trial court properly granted summary judgment in favor of Diamond Equipment. Appellants' sole assignment of error is without merit. The judgment of the trial court is affirmed.
 __________________________________________ JUDGE WILLIAM M. O'NEILL
NADER, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.