TAYLOR et al., Appellants,

v.

MITSUBISHI CATERPILLAR FORKLIFT AMERICA,
INC. et al.; Doehler–Jarvis, Appellee.

[Cite as *Taylor v. Mitsubishi Caterpillar Forklift
Am., Inc.* (2001), 141 Ohio App.3d 685.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1093.

Decided March 2, 2001.

686

*Charles V. Contrada* and *Russell W. Jones,* for appellants.

*Michael S. Scalzo* and *James R. Gant,* for appellee.

MELVIN L. RESNICK, Judge.

This case comes before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which granted the motion of appellee, Doehler Jarvis, for summary judgment and dismissed the employer intentional tort claim of appellant, Robert W. Taylor. Taylor sets forth the following assignments of error:

"The trial court erred in granting appellee's second motion for summary judgment.

"The trial court erred in denying appellant's motion for reconsideration of the March 14, 1997 order granting appellee's second motion for summary judgment."

Robert Taylor was employed by Doehler Jarvis as a trimmer, a job that entailed the "trimming" of unfinished transmission castings. Once he trimmed and tested a casting, Taylor would place it on a "skid" or pallet at the front of his work station. When the skid was full, he was then required to walk out into a seventeen-foot-wide aisle marked by parallel yellow lines to obtain a piece of

plywood to put on top of the castings. This was done so he could stack another layer of castings on the plywood. It was also part of Taylor's job to push the skid from which he removed the untrimmed castings to the front of his station so that he could use it for trimmed castings. This maneuver required Taylor to walk in the aisle as well. The skids were brought to and removed from Taylor's work station by a forklift.

Several forklifts were utilized within Doehler–Jarvis for transporting material. It is undisputed that these forklifts extensively used the aisles to traverse the plant, and, due to the fact that their loads were on forks at the front of the forklift, frequently traveled in reverse. The type of forklift employed in moving Taylor's skids was not equipped with either rear-view mirrors or a backup alarm. It did have a strobe light mounted on the back of the forklift's roll cage that flashed whenever the forklift's engine was operating.

On the afternoon of November 11, 1992, Taylor needed to go into the aisle in front of his station to move an emptied skid and to get a piece of plywood. Prior to entering the aisle, he looked both ways and saw a forklift approximately twenty feet away turning into another aisle. Taylor moved the empty skid and began pushing/carrying a piece of plywood toward the skid containing trimmed castings.

In the meantime, Richard A. Neff, a forklift operator, picked up a steel tub from Willie E. McClellan, another trimmer who occupied the work station immediately to the left of Taylor's. McClellan performed the same job as Taylor; however, he placed the trimmed castings in tubs. A steel I-beam and a large fan separated the two stations and were located near the yellow line of the aisle. Neff pulled off the aisle to the left of McClellan's station and put the tub down. Neff looked over his right shoulder and then his left shoulder to see if anyone was behind him. He then backed up, at an angle to the aisle, and picked up a second tub, which he stacked on top of the first tub. Neff again looked over his right shoulder and his left shoulder and saw no one behind the forklift. However, as Neff backed up the second time, the forklift struck Robert Taylor, who was near the edge of the aisle and relatively close to the I-beam. Taylor, who presented either his left rear side or back to the forklift, was not aware of the approaching vehicle until he felt the heat from the engine. At that point, he turned and attempted to push away from the forklift, but his efforts were unsuccessful. The left rear wheel of the forklift crushed Taylor's foot and ankle.

Subsequently, appellant and his spouse, Christine Taylor, commenced an action in which they eventually (in their second amended complaint) named Mitsubishi Caterpillar Forklift America, Inc. and Caterpillar Industrial, Inc. (collectively known as "Caterpillar"), Towlift, Inc., and Doehler–Jarvis as defendants. They later voluntarily dismissed their claims but refiled their complaint against the same defendants in May 1996. The trial court ordered that all papers and

depositions from the first case be transferred to the instant cause. Towlift, Inc. was dismissed from the case, with prejudice, in August 1996. The remaining defendants filed motions for summary judgment. The trial court granted appellee's motion for summary judgment and denied Caterpillar's motion. The claim against Caterpillar was dismissed, with prejudice, in March 1998. Thereafter, appellants appealed the grant of summary judgment to appellee.

Appellants concede that the sole issue in both their first and second assignments of error is whether the trial court erred in granting summary judgment to appellee. They contend that there is a triable issue of fact on the question of whether Doehler Jarvis was substantially certain that the injury to Robert Taylor would occur. They further argue that the trial court erred in essentially finding that, in an employer intentional tort case, a worker must present evidence "virtually identical" to that offered in *Whitlock v. Enterprise Metal Serv., Inc.* (Nov. 4, 1994), Lucas App.No. L–94–115, unreported, 1994 WL 602926, in order to overcome the employer's motion for summary judgment.

The standard applicable to the case at bar is found in Civ.R. 56. Civ.R. 56(C) provides for the granting of summary judgment when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific material facts showing that there is a genuine issue for trial. *Id.* Facts that are material are those relevant to the substantive law applicable in a particular case. *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, 519–520, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212.

In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, the Supreme Court of Ohio found that in order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under

such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

In setting forth the proof required to establish intent, the *Fyffe* court held that a plaintiff must offer proof of all three elements "beyond that required to prove negligence and beyond that to prove recklessness * * *. [T]he mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at paragraph two of the syllabus. Rather, it must be shown that the probability of certain consequences is such that the "employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds." *Id.* Only in these circumstances will intent be inferred from the employer's knowledge of all the facts and circumstances that create the risk. *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 16–17, 572 N.E.2d 257, 259–261.

In the present case, appellee argued in its motion for summary judgment that no triable issues existed on the first and second prongs of the *Fyffe* test, that is, whether Doehler–Jarvis had knowledge of the dangerous condition or instrumentality within its business operation and was substantially certain that Taylor would be injured by allowing forklifts to operate in the factory without audible backup alarms. Appellee pointed to an alleged lack of evidence of prior accidents similar to the accident in question, to the lack of evidence of prior requests for audible backup alarms, and to the fact that the flashing strobe light on its forklifts complied with the safety requirements of the Industrial Commission of Ohio. In reply, appellants presented several facts that they asserted created a question of fact on appellee's intent. However, the trial court, in reliance on *Whitlock, supra,* held:

"In the instant case, there is no evidence that safety devices were removed. Furthermore, there is a report of only one prior incident which may or may not have been prevented by the use of an audible backup alarm. As such, plaintiff is unable to meet the second prong of the *Fyffe* test * * *."

We conclude that the trial court's focus in this case was too narrow. Viewing the evidence in a light most favorable to appellants, we hold that there are genuine issues of material fact on all three prongs needed to determine the intent of an employer in a case brought pursuant to *Fyffe.*

As to appellee's knowledge of a dangerous condition or instrumentality within its factory, Charles R. Stoncheck, the Doehler–Jarvis safety director for the years 1985 through 1994, testified that appellee was concerned with the safety of workers when transport equipment was backing up in a factory and had alarms installed on the larger vehicles. Nevertheless, Stoncheck stated that appellee felt that strobe/flashing lights were the best warning device for most of the vehicles due to the "different kinds of locations and sound levels and light levels" in the

factory. Stoncheck acknowledged that a high noise level existed in the area where Robert Taylor worked, thereby muffling the sound of the forklift engine, and conceded that the lights were ineffective if a worker had his or her back to an approaching forklift. Furthermore, Stoncheck admitted that the flashing lights were less effective in well-lit areas. It is undisputed that the area where Taylor worked was a well-lighted area having a "whole bank of windows." In his affidavit, appellants' occupational safety expert, Gale Kenney, opined that the flashing light on the forklift was not, standing alone, an effective warning device in the context of appellee's business operation and that an automatic audible backup alarm would have prevented the accident.

In addition, just one year before Taylor's injury, another employee, Evelyn Kline, received the same type of injury in essentially the same manner as did Robert Taylor. That is, she was in an aisle, had her back to the forklift, and did not realize that it was backing into her until she felt the heat of the engine. Her foot and ankle were crushed. Kline also described at least three prior incidents that illustrated the alleged inadequacy of the flashing light on forklifts as a warning to workers in the Doehler Jarvis plant.

Thus, it is undisputed that workers, such as Robert Taylor, were required to enter the aisles in the factory as part of their jobs. It is also undisputed that the forklifts were constantly driven through these same aisles as a means of transporting materials and that the forklifts were driven in reverse a majority of time. According to appellee's own safety director, appellee was aware of the fact that a forklift is a dangerous instrumentality in an environment where workers and large machines are required to work in such close proximity and that it sought to equip those machines with a warning signal, that is, the flashing light. Moreover, appellants offered specific material facts to create a question of fact on the issue of whether appellee was substantially certain that Taylor would be harmed by a forklift driven in reverse having only a flashing light and not an audible backup alarm and that, under such circumstances and having this knowledge, appellee required Taylor to perform the dangerous task. Accordingly, appellants' first and second assignments of error are found well taken.

On consideration whereof, this court finds that substantial justice was not done the parties complaining; the judgment of the Lucas County Common Pleas Court is reversed. This cause is remanded to that court for further proceedings consistent with this judgment. Appellee is ordered to pay the costs of this appeal.

*Judgment reversed*
*and cause remanded.*

SHERCK and KNEPPER, JJ., concur.