OPINION
Plaintiff-appellant, the estate of Ellen New, appeals a decision of the trial court granting summary judgment in favor of defendant-appellee, Dairy Mart Convenience Stores, Inc. ("Dairy Mart"), in appellant's claim for an intentional tort and negligent infliction of emotional distress.
Between the hours of 2:15 a.m. and 3:00 a.m. on January 6, 1995, Ellen New was abducted and murdered while working at the Dairy Mart store on East Second Street in Franklin, Ohio. The abduction and murder occurred after a failed robbery attempt. On August 24, 1999, her estate filed a complaint against Dairy Mart alleging claims for an intentional tort and negligent infliction of emotional distress. Dairy Mart moved for summary judgment and on October 13, 2000, the trial court issued a judgment entry granting summary judgment in favor of Dairy Mart.
Appellant now appeals from the trial court's decision and raises three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING DAIRY MART'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S INTENTIONAL TORT CLAIM.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY WEIGHING THE CREDIBILITY OF PLAINTIFF'S EXPERT WITNESS IN ITS DECISION GRANTING SUMMARY JUDGMENT.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING DAIRY MART'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
In the first assignment of error, appellant contends that the trial court erred in granting summary judgment on the intentional tort claim. Summary judgment is appropriate pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. "[I]f the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party." Id.
Our standard of review on summary judgment is de novo. Jones v. ShellyCo. (1995), 106 Ohio App.3d 440. "[I]n an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee." Fyffev. Jeno's (1991), 59 Ohio St.3d 115, 119, quoting Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
In order to avoid summary judgment, appellant must present evidence to establish all three of the elements required in an intentional tort claim against an employer. The Ohio Supreme Court has articulated these elements as:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Id. at paragraph one of the syllabus.
The trial court granted summary judgment on the basis that appellant was not able to establish the second requirement of the above test. The second prong of the test requires the employee to establish that the employer had knowledge that harm to the employee was substantially certain to occur. The Ohio Supreme Court further defined the "substantially certain" requirement in Fyffe at paragraph two of the syllabus:
 [P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
In support of the argument that Dairy Mart knew that such an injury was substantially certain to occur, appellant argues that Dairy Mart had knowledge of prior violent crimes at the Franklin store. Specifically, a Dairy Mart clerk was maced during a robbery attempt on February 3, 1993. In addition, an employee of the Domino's Pizza next door to the store was assaulted August 2, 1992. The only details in the record of this second crime are in a police report and it is unclear exactly where this assault occurred or what circumstances surrounded the attack.
Appellant also claims there were violent crimes in the immediate vicinity of the Franklin store. Specifically, appellant states that there is evidence that at least three assaults, two assaults with a deadly weapon, one burglary and an armed robbery occurred in the area surrounding the Franklin Dairy Mart in the two years prior to the murder. Appellant also claims that there was an "epidemic of violent crimes" in Dairy Mart's Ohio stores based on information that there were thirty-three robberies in the twenty-two Butler and Warren county Dairy Marts in a three year period before the murder at issue in this case. Appellant also argues that Dairy Mart had knowledge that violent crime was extremely common in the convenience store industry, and that there are more than thirty documented cases involving violent crimes occurring at Ohio Dairy Mart stores during the six year period preceding New's murder.
Finally, appellant argues that Dairy Mart failed to hire qualified personnel for the position of Loss Prevention Manager, that security at the Franklin store was ineffective, and that employees were inadequately trained to cope with violent crime.
In Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, the Ohio Supreme Court reviewed a case in which a convenience store clerk was fatally shot while working alone at night. The evidence submitted revealed that the Lawson store had no security device, alarms or cameras and did not provide its employees with instructions for handling violent situations. Id. The court found that the trial court had appropriately dismissed the plaintiff's complaint because it was not possible for the plaintiff to prove an intentional tort on the facts alleged. Id. "Even if Lawson failed to equip its stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime rate area." Id. at 192-93.
This court reviewed a similar case in which an employee at a gasoline service station was shot during an armed robbery. Rose v. Clark Oil Refining Corp. (June 10, 1991), Butler App. No. CA90-07-139, unreported. In Rose, we first noted that the case was before us on a 12(B)(6) motion to dismiss and that there is a general reluctance to utilize such a motion before discovery and development of evidence. Id. With this in mind, we found that several additional factors distinguished the facts of that case and Mitchell. Specifically, the plaintiff had alleged that based on the lack of security measures, there was a substantial probability that the employee would not be adequately protected. Id. Second, previous robberies and acts of violence at the gas station at issue and surrounding gas stations in the vicinity were evidence of a developing pattern that could show the occurrence of more robberies were a substantial certainty. Id. Considering these factors in light of the heightened standard of review, we found the facts alleged in the complaint were "enough to assure Rose a chance to proceed with her claim at least on to the discovery stage." Id. at 12.
Courts must keep in mind that the employer intentional tort is a narrow exception to the public policy in favor of Ohio's workers' compensation system. See Blankenship v. Cincinnati Milacron Chemicals Inc. (1982),69 Ohio St.2d 608, 612-613. By setting this rigorous requirement of intent on the part of the employer, the Supreme Court declared that the standard was meant to limit the circumstances in which intent could be circumstantially inferred. Burns v. Lawson Co. (1997), 122 Ohio App.3d 105,108. The Workers' Compensation Act "must not be circumvented `simply because a known risk later blossoms into reality.'" Id., quoting VanFossen, 36 Ohio St.3d at 116. "Instead, the `level of risk exposure [must be] so egregious as to constitute an intentional wrong.'" Id., quotingSanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. Construing the facts strongly in favor of the employee, the proof of the employer's intent must still be more than negligence or recklessness. Emminger v.Motion Savers, Inc. (1990), 60 Ohio App.3d 14, 17.
With these principles in mind, we turn to the facts of the case before us. Although appellant alleges prior violent crimes at the Franklin store, we find the robbery and macing incident approximately two and a half years prior to the murder was the only crime even somewhat similar to the one at issue. The bare facts of the incident involving the Domino's employee are too scant to determine exact relevance, although they would appear to be relevant to the issue of crime in the surrounding area, considering the incident did not involve a robbery at the Dairy Mart. In addition, there is no evidence that the crimes appellant relies on at Dairy Mart stores in Butler and Warren Counties involved violent crimes like the murder at issue. The evidence submitted consists of "Robbery Loss" reports, which list only the amount of monetary loss the store sustained and do not mention of whether the robbery involved violence or not. Evidence from appellee's loss prevention manager indicates only one robbery or crime involving violence at the Butler and Warren County stores in the year preceding the murder on January 28, 1994.
The police reports submitted by appellant documenting crime in the surrounding area involve only one instance similar to this case, although no injury occurred. The incident involved an armed robbery of a drive-through. The other crimes involved fights or altercations at a nearby bar, persons driving off without paying for gas, persons leaving stores without paying for items, and altercations where the parties knew each other. While these instances are relevant to the level of crime in the area, they are not sufficiently similar to the crime at issue to create substantial certainty of a future violent crime. See Burns,122 Ohio App.3d at 110.
Considering all of the above evidence in a light most favorable to appellant, we must conclude that the facts do not establish that Dairy Mart knew that a violent robbery and murder were substantially certain to occur in the Franklin store. Although appellant argues that the security and training of employees was inadequate, the record indicates that at least some security measures were in place and that employees received some on-the-job training in dealing with robberies. Only one prior robbery involving any type of violence had occurred at the store and it took place two and one-half years earlier. Although thefts and robberies occurred in surrounding Dairy Marts, nothing indicated that a crime of this level of violence was substantially certain to occur. Knowledge that in general convenience stores are often the target of violent crime is not enough to meet this high standard. Viewing these facts in light of the court's holding in Mitchell, we find that the trial court did not err in granting summary judgment. Appellant's first assignment of error is overruled.
In the second assignment of error, appellant contends that the trial court erred by weighing the credibility of its expert witness in consideration of the motion for summary judgment. Because the purpose of summary judgment is not to try issues of fact, but to determine whether triable issues exist, a court cannot consider the issues of the credibility of a witness or weigh the evidence. Halley v. GrantTrucking, Inc. (1990), 67 Ohio App.3d 357, 364.
Appellant's expert, Ray Chambers, testified that considering all of the evidence, the robbery and murder were substantially certain to occur. The trial court found that Chambers' opinion was based on factors that the supreme court has already determined are insufficient as a matter of law to establish substantial certainty.
The trial court stated in its decision that "while the court must not weigh the credibility of such an opinion in the context of the motion for summary judgment, the court must consider whether the opinion is legally appropriate and not based on false or erroneous facts." The trial court found that the factual foundations for some of Chambers' conclusions were flawed, such as the emphasis he placed on prevalence of prior crimes at this store and the vicinity, when in fact the evidence shows relatively few incidents. We agree. Although Chambers' report relies heavily on the crimes discussed above, the crime at the Franklin store and the surrounding area was relatively non-violent and not an indication that future violent crimes would occur. We also agree with the trial court's determination that Chambers' conclusions as to "substantial certainty" are at odds with the test set forth by the Ohio Supreme Court inMitchell. See Englund v. Wendy's International Inc. (Apr. 26, 1996), Lucas App. No. L-95-229, unreported.
Accordingly, we find that the trial court did not impermissibly weigh evidence or consider the credibility of appellant's expert. Appellant's second assignment of error is overruled.
In the third assignment of error, appellant contends that the trial court erred by granting summary judgment on the claim for negligent infliction of emotional distress. According to R.C. 4123.74, "[e]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or statute for any injury, or occupational disease, or bodily condition, received or contracted by an employee in the course of or arising out of his employment, or for any death resulting from such injury * * *." According to the statute, "injury" does not include "psychiatric conditions except where the conditions have arisen from an injury or occupational disease." R.C.4123.01(C)-(1). Since psychological injuries are not included in the definition of "injury" in the workers' compensation statute, "workers who suffer purely psychological injuries may seek redress through common-law causes of action that allow recovery for those injuries." Bunger v.Lawson Co. (1998), 82 Ohio St.3d 463, 466.
Appellee contends that appellant cannot recover under the common law tort of negligent infliction of emotional distress because New suffered both physical and psychological injuries. However, appellant argues it is seeking compensation only for New's psychological injuries that do not arise out of her physical injuries. Appellant claims New suffered psychological injuries when she was robbed and abducted, before she suffered any physical injuries. Essentially, appellant is arguing that it can recover for New's psychological injuries up until the moment she sustained physical injury.
In Bunger, the Ohio Supreme Court held that "workers who suffer purely
psychological injuries may seek redress through common law causes of actions that allow recovery for those injuries." Id. at 466 (emphasis added). We agree with appellee that employees are limited to bringing common law causes of action for psychological injuries only when a physical injury is not involved. See Bauer v. Fashion Bug (Feb. 26, 1999), Greene App. No. 98 CA 74, unreported. R.C. 4123.01(C)(1) includes recovery for psychological injuries that arise from an injury within the workers' compensation scheme. Any psychological injuries that arise as part of an injury that is compensable under the workers' compensation system should be included together as part of the same claim. SeeHarrison v. Franklin County Sheriff's Dept. (Dec. 12, 2000), Franklin App. No. 00AP-240, unreported. A finding that an employee may recover under the common law for psychological injuries up until the moment of a physical injury, and then from that point on recover under workers' compensation laws would lead to absurd results. Such a rule would also run contrary to the public policy reasons behind the workers' compensation system and the balance of mutual compromise between employer and employee.
Accordingly, we find that the trial court did not err in granting summary judgment on appellant's claim for negligent infliction of emotional distress. Appellant's third assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.