**Peggy S. BELL, Personal Representative of the ESTATE OF Bruce Allen BELL, Plaintiff,**

v.

**PRECISION AIRMOTIVE CORPORATION and Precision Aerospace Corporation, Defendants.**

No. S–10008.

Supreme Court of Alaska.

March 5, 2002.

Before: FABE, Chief Justice, and MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

IT IS ORDERED:

We accepted the following certified questions from the United States District Court for the District of Alaska pursuant to Alaska Rule of Appellate Procedure 407(a):

1) In a hybrid sale/service transaction where the predominant purpose of the transaction is to overhaul and service an engine, is an overhauler/repairer strictly liable for selling and installing, during the course of the overhaul, a used, defective component part that the overhauler/repairer had subjected to extensive repair, inspection and testing? *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 (199[8] ).

2) If the answer to the previous question is "no," would Alaska nevertheless impose strict liability if the engine overhauled and the part installed were to be used in an airplane?

As to the first question posed by the United States District Court, our answer is yes. Our resolution of this inquiry is based on the

fact that in this case, the overhauler/repairer, Precision Airmotive Corporation, charged Northern Air Cargo separately for the used, allegedly defective, component part, a master rod.[1] We rely on RESTATEMENT (THIRD) OF TORTS §§ 1 and 20 (1998) and on the following language from comment (d) to section 20:

> When the product and service components are kept separate by the parties to the transaction, as when a lawn-care firm bills separately for fertilizer applied to a customer's lawn *or when a machinery repairer replaces a component part and bills separately for it, the firm will be held to be the seller of the product.* This is especially true when the parties to the transaction explicitly characterize the property aspect as a sale.

(Emphasis added.)

We do not, however, address the more difficult situation, discussed in the second paragraph of comment (d), "[w]hen the parties do not clearly separate the product and service components" in a hybrid sales-service transaction.

The fact that the master rod replaced by Precision was a used part does not alter our analysis of the question presented in this case, as we have previously held that strict liability applies to sellers of used items when "the product has undergone extensive repair, inspection and testing at the hands of the seller prior to resale."[2]

Based on our answer in the affirmative to the first question posed by the United States District Court, we need not address that court's second inquiry.

Entered at the direction of the court.

---

**1.** The United States District Court found that the overhauler/repairer in this case, Precision Airmotive Corporation, intended to charge Northern Air Cargo $600 for the replaced master rod. Although this amount was not included in the final price, the trial court recognized that "the parties concede that this was a clerical error and that Precision should have charged NAC $600 more in the final price quote." The record supports this finding: Albert Frazier, Director of Quality for Precision, stated in his affidavit that "Precision's price quote referred to a $600 charge for replacement of a master rod, although this amount was not included in the final price, apparently through oversight." The $600 charge for the master rod is also listed on the estimate and on the invoice showing the incorrect total.

**2.** *Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.,* 694 P.2d 150, 154 n. 6 (Alaska 1984).