ESTEP, Appellant and Cross–Appellee,

v.

**RIETER AUTOMOTIVE NORTH AMERICA, INC.**
**et al., Appellants and Cross–Appellees.**

[Cite as *Estep v. Rieter Automotive N. Am., Inc.,* 148 Ohio App.3d 546, 2002-Ohio-3411.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–01–1216.

Decided June 28, 2002.

Kenneth Bauman, for appellant and cross-appellee.

David F. Cooper, for appellee and cross-appellant Rieter Automotive North America, Inc.

Mark P. Seitzinger and Shannon J. Dedmon–George, for appellee and cross-appellant Robert Irsay Co., d.b.a A.H. Lumm Company.

Andrew J. Ayers, for appellee and cross-appellant Industrial Power Systems, Inc.

Stephen C. Roach, for appellee and cross-appellant Helm and Associates, Inc.

---

SHERCK, Judge.

{¶ 1} This appeal comes to us from the Lucas County Court of Common Pleas. There, the court issued summary judgments in a case involving claims for employer intentional tort, products liability, and negligence. Because we conclude that the trial court did not err in determining the issues, we affirm.

{¶ 2} Appellant, Lyle A. Estep, was employed by appellee, Rieter Automotive North America, Inc. ("Rieter"), as a worker on one of its production lines. On

April 22, 1997, appellant was injured when his left hand was pulled into one of the line's machines. In April 1998, appellant filed a complaint alleging multiple claims against Rieter and several unknown defendants. These claims included intentional tort, product liability, and negligence. In March 1998, appellant amended his complaint, adding defendants Automated Handling and Metalfab, Inc., Industrial Power Systems, Inc. ("IPS"), Helm & Associates, Inc. ("Helm"), and Robert Irsay Co., d.b.a. A.H. Lumm Company ("Lumm").

{¶ 3} During discovery, the following facts were disclosed. In early 1997, Rieter converted a "mastic" production line into a "barrier" production line. This conversion required the installation of new machinery, including a combination pinch roller and shear press machine. To accomplish the conversion, Rieter hired AHM to manufacture the pinch roller machine according to certain size specifications. The shear machine was manufactured by Alfa Machine Company and was sent to AHM, who then incorporated it into the pinch roller machine design. Once at the Rieter's factory, IPS installed the electrical systems necessary for the operation of the combined pinch roller/shear machine. Other companies not pertinent to the issues on appeal were also involved in developing the physical setting and computer controls for the barrier line.

{¶ 4} Rieter's safety committee inspected the barrier line prior to its operation and determined that the shear press/pinch roller assembly needed a guard added to a nip-point of the roller portion of the machine. Michael Scott, project engineer for Rieter, initially contacted Helm to install the needed guard. Helm, in turn, contracted with Lumm to make and install the guard. This was completed by mid-March 1997. According to deposition testimony, Michael Scott and representatives from both Helm and Lumm, at separate times, inspected the machine and reviewed the specifications for the guard. Lumm's employee stated that Michael Scott said that he "wanted to make sure that [the roller machine] was fully guarded."

{¶ 5} After the guards were installed, the barrier line was run to determine whether there were any problems. Appellant received some training on its operation. During one of these practice runs, appellant was operating the pinch roller/shear press machine. He noticed that the webbing material had begun to "walk," meaning shift and slip sideways on the ramp. In response, appellant grabbed the material with both hands. He then attempted to pull on one side of the webbing to tug it back into position. Appellant stated that the line, which was preset to cut at certain intervals, seemed to have been stopped too long. While still holding onto the side of the webbing with his left hand, he looked over at a control panel on the wall to see whether the line had been shut down. According to appellant, the pinch roller machine suddenly started up and his left

hand was pulled into the rollers. He immediately hit a stop switch and yelled for help.

{¶ 6} A nearby worker came to appellant's aid, raising a lever that opened the rollers and permitted the removal of appellant's hand. Appellant was taken to the hospital and ultimately underwent four major surgical procedures. Appellant allegedly lost the end of his left forefinger and the use of his left thumb.

{¶ 7} After discovery was completed, appellant, Rieter, IPS, Helm, and Lumm filed motions for summary judgment. The trial court granted Rieter's motion for summary judgment on the issues of employer intentional tort and negligence claims. The trial court also granted summary judgment in favor of IPS as to the product liability claims but denied Helm's and Lumm's motions for summary judgment as to both the products liability and negligence claims. Finally, the trial court denied appellant's motion for summary judgment.

{¶ 8} The trial court granted motions for reconsideration in favor of Helm and Lumm as to the products liability claims. The court affirmed all other previous rulings on reconsideration.

{¶ 9} Appellant now appeals from that judgment, setting forth the following five assignments of error:

{¶ 10} "Assignment of Error Number One:

{¶ 11} "The lower court erred to the prejudice of appellant in granting appellee Rieter Automotive North America, Inc.'s motion for summary judgment.

{¶ 12} "Assignment of Error Number Two:

{¶ 13} "The lower court erred to the prejudice of appellant in granting appellee Industrial Power Systems, Inc.'s motion for summary judgment.

{¶ 14} "Assignment of Error Number Three:

{¶ 15} "The lower court erred to the prejudice of appellant in granting the various appellees' motions for partial summary judgment on the issue of punitive damages.

{¶ 16} "Assignment of Error Number Four:

{¶ 17} "The lower court erred to the prejudice of appellant in granting in part appellee and cross-appellant Helm & Associates, Inc.'s motion for summary judgment.

{¶ 18} "Assignment of Error Number Five:

{¶ 19} "The lower court erred to the prejudice of appellant in granting in part appellee and cross-appellant Robert Irsay Co. d.b.a. A.H. Lumm Company's motion for summary judgment."

{¶ 20} Cross-appellant Helm appeals, setting forth the following sole assignment of error:

{¶ 21} "The trial court erred by not granting summary judgment in favor of defendant/appellee/cross-appellant Helm & Associates, Inc. on plaintiff/appellant's negligence claim."

{¶ 22} Cross-appellant A.H. Lumm Co. appeals, setting forth the following sole assignment of error:

{¶ 23} "The lower court erred to the prejudice of cross-appellant Robert Irsay Co. d.b.a. A.H. Lumm Company by denying its motion for summary judgment on the issue of negligence."

{¶ 24} All assignments of error involve the trial court's grant or denial of various motions for summary judgment. The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). With this standard in mind, we will now address the parties' assignments of error.

I

{¶ 25} Appellant, in his first assignment of error, argues that the trial court erred in granting summary judgment in favor of his employer, Rieter Automotive.

{¶ 26} Generally, all actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes. One exception to this rule includes claims for injuries caused by employer intentional torts. See *Johnson v. BP Chem., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107.

{¶ 27} In an action for intentional tort against an employer, a plaintiff must show:

{¶ 28} "(1) [K]nowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to

the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 29} Cases involving workplace intentional torts must be judged on the totality of the circumstances surrounding each incident. *Gibson v. Drainage Prod., Inc.* (2002), 95 Ohio St.3d 171, 178, 766 N.E.2d 982. Mere knowledge and appreciation of a risk do not establish "intent" on the part of the employer. *Cross v. Hydracrete Pumping Co., Inc.* (1999), 133 Ohio App.3d 501, 507, 728 N.E.2d 1104, citing to *Fyffe, supra,* at 155, 570 N.E.2d 1108. Proof that the employer knew to a substantial certainty that harm to the employee would result often must be demonstrated through circumstantial evidence and inferences drawn from the evidence. See *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044; *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 17, 572 N.E.2d 257. The *Emminger* court explained:

{¶ 30} "Proof of the employer's intent * * * is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee * * * the proof of the employer's intent must still be more than negligence or recklessness." *Emminger, supra.*

{¶ 31} An employer may be liable for the consequences of its acts even though it never intended a specific result. *Gibson, supra,* at 179, 766 N.E.2d 982. " 'If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.' " *Gibson, supra,* at 179, 766 N.E.2d 982, quoting *Van Fossen v. Babcock & Wilcox Co.,* 36 Ohio St.3d 100, 115, 522 N.E.2d 489. Nevertheless, an employer is considered to have intended to cause injury to an employee "only when a reasonable person could infer from the surrounding circumstances that the employer, *with knowledge of a risk of certain injury from a dangerous condition, still requires an employee to perform the dangerous procedure.*" (Emphasis in the original.) *Youngbird v. Whirlpool Corp.* (1994), 99 Ohio App.3d 740, 747, 651 N.E.2d 1314, citing *Fyffe, supra,* at paragraph two of the syllabus. See, also, *Gibson, supra,* at 179, 766 N.E.2d 982.

{¶ 32} In this case, appellant asserts that he told his foreman and other management personnel that the machine generally needed additional guarding, but he could not specifically remember what he told to whom. Appellant also knew of the methods of reporting unsafe workplace conditions and yet filed no formal complaint or grievance. Appellant had previous experience in the operation of pinch roll machines, which had warning labels. He knew not to place his hands near the pinch points, which Rieter had taken steps to guard. No

employees from other shifts reported any injuries or complaints regarding the pinch roll machine.

{¶ 33} In our view, appellant's main complaints centered on his frustration with the overall productivity problems with the "piece of junk" shear machine and with its failure to run smoothly, rather than with the warning of any dangerous conditions under which he was required to work. Even presuming, however, that appellant told management that the machine needed more guarding, the failure to install additional guarding alone does not demonstrate that Rieter required appellant to submit himself to any dangerous conditions from which injury was substantially likely to occur. The record shows that Rieter's safety committee inspected and recommended guarding, which was installed. Rieter's actions indicate an appreciation of a dangerous condition and an attempt to prevent injuries from such condition. Whether the guarding was adequate may be a question of negligence but does not rise to the level necessary to establish an intentional tort. Therefore, we conclude that the trial court properly granted summary judgment as to appellant's employer intentional tort claims.

{¶ 34} Appellant also contends that Rieter is liable for products liability claims under a dual capacity theory. Appellant argues that Rieter was responsible for the fabrication and installation of the barrier line and, thus, acted not only as appellant's employer but also as a "general contractor." As such, appellant claims that Rieter may be held liable for defects in the manufacture or assembly of the pinch roller machine. We disagree.

{¶ 35} "It is universally held that where an employer designs and manufactures a product for use by its employees and not for sale to the general public, an employee injured while using that product within the scope of his employment may not maintain a products liability action against his employer under the dual-capacity doctrine on the theory that the employer assumed an independent role as manufacturer. [Citations omitted.]" *Schump v. Firestone Tire & Rubber Co.* (1989), 44 Ohio St.3d 148, 151, 541 N.E.2d 1040.

{¶ 36} In this case, Rieter was the primary designer of the custom-manufactured pinch roller/shear machine assembly which was not created for sale to the general public. Appellant was injured while using the machine within the scope of his employment. Consequently, appellant may not maintain an action against Rieter under the dual capacity doctrine. Therefore, since appellant is limited to claims against Rieter as provided by Ohio's workers' compensation system, the trial court properly granted summary judgment as to all other claims against Rieter.

{¶ 37} Accordingly, appellant's first assignment of error is not well taken.

## II

{¶ 38}   We will address appellant's second, fourth, and fifth assignments of error together.   Appellant contends in each of these that the trial court erred in granting summary judgment as to its strict liability claims against IPS, Helm, and Lumm.

{¶ 39}   R.C. 2307 states that a manufacturer or a supplier may be held strictly liable for a "product" under certain conditions.   R.C. 2307.71 defines a "product" as "any object, substance, mixture, or raw material that constitutes tangible personal property and that satisfies all of the following:

{¶ 40}   "(a) It is capable of delivery itself, or as an assembled whole in a mixed or combined state, or as a component or ingredient;

{¶ 41}   "(b) It is produced, manufactured, or supplied for introduction into trade or commerce;

{¶ 42}   "(c) It is intended for sale or lease to persons for commercial or personal use."

{¶ 43}   In strict liability in tort, a manufacturer or seller of a defective product is held responsible, not because it is necessarily "at fault," but because "it is more able than the consumers to spread that loss among those who use and thereby benefit from the product."   *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 284, 31 OBR 559, 511 N.E.2d 373.   A product which is custom-made at the express request and design of the purchaser and which is not launched into the stream of commerce to consumers is not a "product" for purposes of imposing strict liability upon the maker.   See *Queen City Terminals v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661[1]; *Campbell v. B.P. Prod., Inc.* (1996), 115 Ohio App.3d 604, 685 N.E.2d 1280.

{¶ 44}   In this case, the pinch roller machine was a custom-made unit, designed primarily by Rieter.   IPS, an electrical contractor, installed various components and wiring, which were created specifically for this unit.   Likewise, Helm and Lumm were involved with the construction of the guards that were also ordered by Rieter.   None of these parties was engaged in the business of constructing the particular components installed.   Rather, they were contacted to perform specific custom services on the machinery designed and ordered by Rieter.   Therefore, in our view, for the purposes of imposing strict liability, none

---

1.   We are aware that *Queen City,* supra, addressed claims that accrued prior to the enactment of R.C. 2307.71 et seq. and was determined based upon the Restatement of the Law 2d, Torts (1965), Section 402A, adopted in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.   Nevertheless, the *Queen City* rationale is instructive in determining which items fall within the definitions of the current statutory scheme.

of these parties is either a manufacturer or supplier of a product within the statutory definitions of R.C. 2307.71 et seq.

{¶ 45} Accordingly, appellant's second, fourth, and fifth assignments of error are not well taken. ,

### III

{¶ 46} Appellant, in his third assignment of error, argues that the trial court erred in granting partial summary judgment as to punitive damages in this case.

{¶ 47} Punitive damages are available upon a finding of actual malice. "Actual malice" for these purposes is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Thus, punitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable. Id. at 335, 512 N.E.2d 1174.

{¶ 48} In this case, nothing in the record indicates that any of the parties demonstrated either ill will or a conscious disregard for the safety of others, which would entitle appellant to an award of punitive damages. Therefore, the trial court did not err in granting summary judgment against appellant as to the punitive damage claims.

{¶ 49} Accordingly, appellant's third assignment of error is not well taken.

### IV

{¶ 50} We will now address the assignments of error presented by cross-appellant Helm and cross-appellant Lumm. Both parties contend that the trial court erred in denying their motions for summary judgment as to appellant's negligence claims because they did not design but only constructed the guards based upon Rieter's specifications.

{¶ 51} In order to defeat a motion for summary judgment in a negligence action, a plaintiff must show that the defendant owed the plaintiff a duty, the duty was breached, and the breach was the proximate cause of injuries to the plaintiff which resulted in damages. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 423 N.E.2d 467. Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 645, 597 N.E.2d 504, citing to *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505; *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188. Injury is

foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone. *Simmers*, supra.

{¶ 52}  "A 'duty' is an obligation imposed by law on one person to act for the benefit of another person due to the relationship between them." *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 578, 613 N.E.2d 1014, citing Prosser, Law of Torts (5th Ed.1984) 356, Section 53.  Under Ohio law, a general contractor may be liable for the negligence of its subcontractor. *Bohme, Inc. v. Sprint Internatl. Communications Corp.*, 115 Ohio App.3d 723, 733, 686 N.E.2d 300.  The Supreme Court of Ohio has held:

{¶ 53}  "Where danger to others is likely to attend the doing of certain work unless care is observed, the person having it to do is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants." *Richman Bros. v. Miller* (1936), 131 Ohio St. 424, 6 O.O. 119, 3 N.E.2d 360, at paragraph one of the syllabus; *Covington & Cincinnati Bridge Co. v. Steinbrock & Patrick* (1899), 61 Ohio St. 215, 55 N.E. 618, at paragraph one of the syllabus.

{¶ 54}  Whether a duty exists on the part of a particular defendant is a question of law for the court to decide.  *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶ 55}  In this case, Helm subcontracted with Lumm to construct the guard.  There were no written plans or specifications for the guards that would show that Lumm only followed the instructions of Michael Scott.  Rather, testimony was presented that employees from both Helm and Lumm consulted with Scott about the design, fabrication, and placement of the needed guards. Appellant provided expert testimony that the maker and installer of the guard should have known that it would not prevent access to the rollers.  Thus, evidence was presented that, in undertaking to provide the guards, both Helm and Lumm owed a duty of ordinary care to appellant to construct and install an adequate guard or to warn Rieter that it would not perform as expected. Whether Helm and Lumm breached that duty of care by virtue of their knowledge, advice, and expertise in the designing and fabrication of the guard remains an issue of fact for the trier of fact.  Likewise, whether appellant's injuries were proximately caused by the alleged inadequacy of the guard is also a disputed issue of fact.  Therefore, we conclude that summary judgment is not appropriate as to the negligence claims against Helm and Lumm.

{¶ 56}  Accordingly, the two assignments of error set forth by cross-appellants Helm and Lumm are not well taken.

{¶ 57} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed and divided equally among appellant and cross-appellants.

Judgment affirmed.

MARK L. PIETRYKOWSKI, P.J., and RICHARD W. KNEPPER, J., concur.