Donald G. MUNHOVEN, Suann A. Munhoven, Donald T. Munhoven, and Suann A. Munhoven as the Natural Parent and Guardian of Miles L. Munhoven, a Minor Child, Plaintiffs,

v.

NORTHWIND MARINE, INC., Defendant.

No. K03–0004CV(RRB).

United States District Court, D. Alaska.

Jan. 26, 2005.

---

## *ORDER REGARDING SUMMARY JUDGMENT MOTIONS*

BEISTLINE, District Judge.

### I. INTRODUCTION

Before the Court is Defendant Northwind Marine, Inc. ("Northwind") seeking partial summary judgment on the theory that Plaintiff's skiff was not a product.[1] Plaintiffs Donald G. Munhoven, Suann A. Munhoven, Donald T. Munhoven, and Miles L. Munhoven oppose and submit a motion for partial summary judgment to establish that their skiff is a product subject to strict products liability.[2]

Because the Court concludes that the skiff is a product for purposes of products liability, it **DENIES** Defendant's Motion for Partial Summary Judgment and **GRANTS** Plaintiffs' Cross–Motion for a Product Finding.

### II. FACTS

Donald Munhoven ordered an aluminum hulled skiff, the Reliance skiff, from Northwind in February of 1997.[3] Munhoven had seen several other Reliance skiffs in Ketchikan and liked their look.[4] Munhoven contacted Bruce Reagan ("Reagan"), the owner of Northwind, to discuss purchasing a Reliance skiff.[5] Munhoven

---

1. Clerk's Docket No. 23 at 6.

2. Clerk's Docket No. 24A at 1.

3. *Id.* at Ex. G, ¶ 2.

4. *Id.* at ¶¶ 2–3.

5. *Id.* at ¶ 3.

initially requested some design changes in the skiff's deck layout.[6]  Northwind rejected these changes because the design of the Reliance skiff was a proven design that met the United States Coast Guard standards for safety and structural integrity.[7]  However, Reagan agreed to make three modifications to the Reliance skiff.[8]  These modifications included: (1) adding handrails to the steering console and moving it further toward the stern;  (2) adding pockets to hold rubber bumpers;  and (3) enlarging the forward compartment hatch to hold an anchor.[9]

Munhoven purchased the skiff in March of 1998.[10]  The Munhovens used the boat daily as transportation between their home and Ketchikan.[11]  In November of 1999, Munhoven discovered that the aft compartment of the skiff was taking on water from cracks that had formed on the welded joints.[12]  This was subsequently repaired and paid for by Northwind.[13]  In the fall of 2001, Munhoven noticed that water was accumulating in the center, below-deck compartment of the skiff.[14]  In December, Munhoven and his son suspended the skiff above the beach at low tide to inspect the bottom hull for cracks.[15]  Munhoven had an electric wheel grinder to remove paint from the hull.[16]  When he touched the wheel grinder to the hull, an explosion occurred that injured both Munhoven and his son.[17]

The Munhovens subsequently filed this civil action alleging, *inter alia*, strict products liability against Northwind.

## III.  STANDARD OF REVIEW

Rule 56  of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[18]  The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact.[19]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[20]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[21]  However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the

6.  *Id.* at ¶ 5.

7.  *Id.* at ¶¶ 4–5.

8.  *Id.* at Ex. G, ¶ 12.

9.  *Id.*

10.  Clerk's Docket No. 23 at Ex. B, 2.

11.  *Id.* at Ex. C, ¶ 13.

12.  *Id.* at ¶ 14.

13.  *Id.* at ¶¶ 16–19.

14.  *Id.* at ¶ 21.

15.  *Id.* at ¶¶ 23–24.

16.  *Id.* at ¶ 24.

17.  *Id.* at ¶¶ 26–28.

18.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

19.  *Id.* at 323–25, 106 S.Ct. 2548.

20.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

21.  *Id.* at 255, 106 S.Ct. 2505.

## IV. DISCUSSION

 The issue here is whether the skiff is a "product," thus making Northwind subject to liability on a strict products liability theory. The Alaska Supreme Court has not expressly ruled what constitutes a "product," but the Court has often relied on the Restatement (Third) of Torts.[22] The Restatement defines a product as "tangible personal property distributed commercially for use or consumption."[23] Here, the skiff is tangible personal property that was distributed commercially for use by Northwind.

 This Court is unpersuaded by Northwind's argument that products are only subject to strict liability if they are mass produced. There is nothing in Alaskan law, nor the Restatement, imposing such a requirement. Northwind relies on a California case for this proposition.[24] However, while *Kriegler* included mass-produced homes as "products," there is nothing in the opinion to suggest that mass-production is a prerequisite for all types of products.[25] Therefore, the Court also disagrees with Northwind that Munhoven's request for modifications to the skiff remove the skiff from the definition of a "product."[26] These modifications were minor and a far cry from the custom-built items primarily designed by the purchaser in the decisions relied on by Northwind.[27] Further, the modifications made to the skiff did not concern the fuel tank, the area at issue in this lawsuit.

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is **DENIED** and Plaintiffs' Cross–Motion for a Product Finding is **GRANTED**.

---

**22.** *See Bell v. Precision Airmotive Corp.*, 42 P.3d 1071, 1072 (Alaska 2002).

**23.** Restatement (Third) of Torts: *Products Liability* § 19.

**24.** *Kriegler v. Eichler Homes, Inc.*, 269 Cal. App.2d 224, 74 Cal.Rptr. 749 (1969).

**25.** *See id.* Though *Oliver v. Superior Court*, 211 Cal.App.3d 86, 259 Cal.Rptr. 160, 162 (1989), stated that mass production was relevant to the finding of a home being subject to product liability, the Court implied that there was a distinction between how it treated the construction of residences and other types of products.

**26.** *See Wirth v. Clark Equipment Co.*, 457 F.2d 1262, 1267 (9th Cir.1972) ("Also, even if the machine had been fully custom made, we are by no means convinced that this circumstances would prevent this plaintiff from recovery under the doctrine of strict liability.") (interpreting Restatement (Second) of Torts § 402A). Alaska has also adopted Restatement (Second) of Torts § 402A. *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1116 (1980).

**27.** *See Estep v. Rieter Automotive N. Am., Inc.*, 148 Ohio App.3d 546, 774 N.E.2d 323, 328–29 (2002) (noting that the purchaser primarily designed the item); *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 653 N.E.2d 661, 665 (1995) (noting that purchaser supplied all the plans and specifications).