DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Timothy Schaad, appeals from a Washington County Common Pleas Court decision granting summary judgment in favor of appellee, Valley Proteins, Inc., on an employer intentional tort claim. He contends a genuine issue of material fact exists as to whether appellee committed an intentional tort. However, appellant failed to present any evidence that appellee knew that having him unload the fat and bone truck was substantially certain to result in injury. Thus, reasonable minds can only conclude appellee did not commit an intentional tort.
 I. Facts {¶ 2} Appellee is an animal by-products rendering company based out of Winchester, Virginia. In November 2000, appellee hired appellant as a truck driver at its plant in Marietta, Ohio. Appellee has three different types of truck drivers: bulk tank grease drivers, bulk drum grease drivers, and fat and bone drivers. Appellant was hired as a bulk tank grease driver. However, appellee required its bulk tank grease drivers to fill in for the fat and bone drivers as needed. Therefore, the plant manager also trained appellant in the proper procedures for loading and unloading a fat and bone truck.
 {¶ 3} In March 2001, appellant left his job with appellee. Subsequently, in December 2002, appellee rehired appellant. Appellant was rehired as a bulk tank grease driver. However, like before, appellant was to fill in for the fat and bone drivers as needed.
 {¶ 4} On April 28, 2003, appellant drove a fat and bone route. The next morning, appellant returned to the plant to unload the truck. Although appellant had been trained in how to unload a fat and bone truck and had helped other fat and bone drivers unload their trucks, this was his first time unloading a fat and bone truck by himself. A fat and bone truck consists of a by-products holding area that is separated from the flatbed portion of the truck by a center gate. The center gate is held in place by five bars and two pins attached to a safety lever. To release the gate, the employee unloading the truck must undertake several steps.[1] First, the employee stands in the bed of the truck and removes the bars that hold the gate in place. The employee then raises the safety lever four or five inches so the employee can reach it from the top of the truck. The two pins attached to the safety lever, however, remain in the floor of the truck. After raising the safety lever four or five inches, the employee rides the tailgate to the top of the truck and steps out onto a catwalk. Once on the catwalk, the employee pulls the safety lever and releases the center gate.
 {¶ 5} On this particular day, appellant had removed the bars holding the center gate in place and had raised the safety lever four or five inches. As appellant turned to walk toward the tailgate, the center gate released prematurely and the load rushed out, pushing appellant into the pit where the animal by-products were dumped. Appellant suffered physical injures as a result of his fall into the pit.
 {¶ 6} On February 23, 2004, appellant filed a complaint against appellee, alleging that appellee had committed an intentional tort. Subsequently, appellee filed a motion for summary judgment. Appellant responded by filing a memorandum in opposition to the motion for summary judgment. On June 21, 2005, the trial court issued a decision granting summary judgment to appellee. The court found that appellee's affidavits and references to various parts of the record were sufficient, absent response from appellant, to demonstrate that there was no genuine issue of material fact. The court noted that appellant argued he had evidence showing that appellee knew of the dangerous process within its business operations and knew that injuries to employees were substantially certain to result from the dangerous process. However, the court found that there was no "logical or causative connection" between appellant's cited facts and his injury. In the end, the court concluded that no genuine issue of fact existed as to whether appellee committed an intentional tort. On July 6, 2005, the trial court journalized its judgment entry granting appellee's motion for summary judgment. Appellant then filed this timely appeal.
 II. Assignment of Error {¶ 7} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT-APPELLEE ON THE PLAINTIFF-APPELLANT'S CLAIMS OF EMPLOYER INTENTIONAL TORT.
 III. Standard of Review {¶ 8} In reviewing a summary judgment, the lower court and appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. See Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence against it construed most strongly in its favor. Bosticv. Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46. See, also, State ex rel. Coulverson v. OhioAdult Parole Auth. (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, 674 N.E.2d 1164, quoting Dresher v. Burt (1996),75 Ohio St.3d 280, 395, 662 N.E.2d 264.
 IV. Law and Analysis {¶ 9} Although the workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute a tort action against the employer when the employer's conduct is sufficiently egregious to constitute an intentional tort. SeeBlankenship v. Cincinnati Milacron Chemicals, Inc. (1982),69 Ohio St.2d 608, 433 N.E.2d 572. In such cases, it is said that the employer's intentional tort occurs outside the employment relationship and therefore, recovery is not limited to the workers' compensation provisions. See Brady v. Safety-KleenCorp. (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus.
 {¶ 10} An intentional tort is "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Jones v. VIP Dev.Co. (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046, paragraph one of the syllabus. To establish an intentional tort of an employer, the employee must demonstrate the following: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.
 {¶ 11} Because it is dispositive, we begin our analysis with the second prong of Fyffe. Under the second prong, if the employer knows that the dangerous process is substantially certain to cause harm to the employee, intent is inferred. SeeJones, 15 Ohio St.3d at 95. An employee cannot demonstrate the "substantial certainty" element simply by showing that the employer acted negligently or recklessly. See Hannah v. DaytonPower Light Co., 82 Ohio St.3d 482, 484, 1998-Ohio-408,696 N.E.2d 1044, citing Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus. In Fyffe, the Supreme Court of Ohio explained:
To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to the employees are certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
Fyffe, 59 Ohio St.3d 115, paragraph two of the syllabus.
 {¶ 12} "Establishing that the employer's conduct was more than negligence or recklessness `is a difficult standard to meet.'" Goodin v. Columbia Gas of Ohio, Inc. (2000),141 Ohio App.3d 207, 220, 750 N.E.2d 1122, quoting McGee v. GoodyearAtomic Corp. (1995), 103 Ohio App.3d 236, 246, 659 N.E.2d 317. Proof that the employer knew that harm to the employee was substantially certain to result often must be demonstrated through circumstantial evidence and inferences drawn from the evidence. Goodin, citing Emminger v. Motion Savers, Inc.
(1990), 60 Ohio App.3d 14, 17, 572 N.E.2d 257. "Even with [the] facts construed most strongly in favor of the employee as required by Civ.R. 56, the proof of the employer's intent must still be more than negligence or recklessness." Emminger.
 {¶ 13} Appellee supported its motion for summary judgment with affidavits from Roger Dunhoft, the general manager of the Pittsburgh facility,[2] and Dennis Forrester, the transportation manager at the Pittsburgh facility. Appellee also relied on deposition testimony from appellant and Mr. Forrester. In his deposition, appellant testified that when appellee first hired him, the plant manager trained him in the procedures for unloading a fat and bone truck. Additionally, appellant testified that he had helped other drivers unload their fat and bone trucks once or twice. He indicated that while he had not unloaded a fat and bone truck unaided prior to April 29, 2003, he believed his training was sufficient to enable him to unload the truck
 {¶ 14} In describing the events of April 29, 2003, appellant testified that the pins attached to the safety lever were in place when he turned away from the center gate. Mr. Dunhoft, who has 20 years experience in the rendering business, attested that he is not aware of the center gate of a fat and bone truck opening while the safety pins were in place. Additionally, he indicated that he is not aware of a Valley Proteins employee ever being injured by a malfunctioning center gate. He indicated that Valley Proteins has utilized the same unloading procedure for over 10 years without an incident like that which occurred on April 29, 2003. Likewise, Mr. Forrester, who has 30 years experience in the rendering business, attested that he is not aware of the center gate on a fat and bone truck opening while the safety pins were in place. He also indicated that he is not aware of a Valley Proteins employee ever being injured by a malfunctioning center gate. He indicated that Valley Proteins has utilized the same unloading procedure for over 10 years without an incident like that which occurred on April 29, 2003. In his deposition, Mr. Forrester testified that he has "never had a load let loose" prematurely. Both Mr. Forrester and Mr. Dunhoft attested that they never anticipated, much less considered it a substantial certainty, that an employee would be injured as a result of the procedure used to unload a fat and bone truck.
 {¶ 15} Appellant takes issue with appellee's reliance on Mr. Forrester's and Mr. Dunhoft's affidavits. He acknowledges that Mr. Forrester and Mr. Dunhoft occasionally visited the Marietta plant. However, he argues that neither Mr. Forrester nor Mr. Dunhoft actually worked at the Marietta plant.
 {¶ 16} Civ.R. 56(E) provides that affidavits supporting motions for summary judgment "shall be based on personal knowledge * * *." Both Mr. Forrester and Mr. Dunhoft attested that they were making their affidavit based on their personal knowledge. See Smith v. Board of Cuyahoga Cty. Commrs.,
Cuyahoga App. No. 86482, 2006-Ohio-1073, at ¶ 40 ("Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E).") Moreover, their affidavits demonstrate that they have personal knowledge of the facts asserted therein. Thus, we will not disregard their affidavits. See Civ.R. 56(E).
 {¶ 17} Appellant argues that there is a genuine issue of material fact as to whether appellee knew that harm was substantially certain to occur. To support his argument, appellant submitted his own affidavit and the affidavit of William Vandall, who worked for appellee as a fat and bone driver. In addition, appellant relied on his deposition testimony and the deposition testimony of Mr. Forrester and Mr. Dunhoft.
 {¶ 18} We note that a large portion of appellant's argument is devoted to the condition of the area surrounding the pit. He attempts to establish that appellee knew about the dangerous condition of the area around the pit and knew that this dangerous condition was substantially certain to cause harm. However, in his deposition, appellant testified that the condition of the ground had nothing to do with his accident. He testified that the load carried him through the air and that he did not touch the ground. Thus, there is no causal connection between the condition of the area around the pit and appellant's injuries. See Haneyv. The Timken Co., Stark App. No. 2002CA00310, 2003-Ohio-1701, at ¶ 66-67 (noting that in an employer intentional tort action, the plaintiff must prove a nexus between the act or omission of the employer and the plaintiff's injury).
 {¶ 19} Appellant's deposition testimony indicates that the premature release of the center gate caused his injuries. Therefore, appellant had to set forth specific facts showing that there is a genuine issue of material fact as to whether appellee knew that the procedure for unloading a fat and bone truck was substantially certain to result in harm to appellant. SeeVahila. To do this, appellant relied on Mr. Vandall's affidavit. However, the statements in Mr. Vandall's affidavit relate to the condition of the area surrounding the pit. For example, Mr. Vandall stated that the pit and surrounding area "were not maintained in a safe and adequate manner." In addition, he indicated that appellee "was fully aware of the dangerous condition of the pit and surrounding area * * *." Mr. Vandall stated: "[Appellee] knew that if [appellant] and their drivers were continually subjected by their employment as the persons required to unload the trucks and animal by-products to such dangerous procedure or condition, harm to [appellant] and the drivers would be a substantial certainty, not just a high risk." He indicated that appellee required appellant and the other drivers "to continue to perform the dangerous task, to wit, loading and unloading the trucks in extremely dangerous, filthy, and slippery conditions without adequate safeguards and/or safety measures."
 {¶ 20} Mr. Vandall's affidavit does not create a genuine issue of fact for trial. His affidavit does not set forth any facts indicating that appellee knew that the procedure for unloading a fat and bone truck was substantially certain to result in harm to appellant. Instead, Mr. Vandall's affidavit focuses on appellee's knowledge as it pertained to the condition of the area surrounding the pit. However, as noted above, there is no causal connection between the condition of the area around the pit and appellant's injuries.
 {¶ 21} To support his argument, appellant also provided evidence of prior accidents at the Marietta plant.[3]
However, the prior accidents appellant relies upon are dissimilar to the accident in this case. Appellant has presented no evidence of prior accidents involving the center gate of a fat and bone truck.
 {¶ 22} Appellant acknowledges that there are no prior accidents "exactly similar" to his accident. Nevertheless, he argues that the nature of the unloading procedure was such that appellee knew that injury from the procedure was a substantial certainty.
 {¶ 23} "[T]he absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed." Taulbeev. Adience, Inc., BMI Div. (1997), 120 Ohio App.3d 11, 20,696 N.E.2d 625. An absence of prior accidents, however, is not necessarily fatal to a plaintiff's case. Id. In Cook v.Cleveland Elec. Illuminating Co. (1995), 102 Ohio App.3d 417,429-430, 657 N.E.2d 356, the Eighth District Court of Appeals stated:
Simply because people are not injured, maimed, or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of Fyffe.
 {¶ 24} Absent some other evidence indicating that injury is substantially certain to occur, such as a number of prior accidents resulting from the dangerous procedure, a determination of substantial certainty turns in large part on the nature of the dangerous procedure. Palk v. S.E. Johnson Cos. (Nov. 9, 1993), Franklin App. No. 93AP-573. Thus, in reviewing whether the employer knew that harm to the employee was substantially certain to occur, courts should focus not only on the existence of prior similar accidents, but also "on the employer's knowledge of the degree of risk involved." Taulbee, 120 Ohio App.3d at 21.
 {¶ 25} Appellant asserts that he personally informed appellee of the danger prior to the accident. He argues that he made several complaints to appellee about the safety and condition of appellee's facility and equipment. In his affidavit, appellant indicated that appellee instructed its employees to use a pressure washer to clean the trucks, pit, and area surrounding the pit. He stated that several months prior to his accident, the pressure washer at the plant stopped working. Appellant attested that he informed appellee that without the pressure washer, "it was not possible to maintain the trucks, truck beds, `pit', and surrounding areas in a safe, friendly, non-hazardous environment." Moreover, he attested that he informed appellee that "if the conditions of the trucks, truck beds, `pit', and surrounding area were not correctly cleaned and maintained, it was a substantial certainty and only a matter of time before someone was injured."
 {¶ 26} Although appellant asserts that he personally informed appellee of the danger, his statements to appellee concerned the condition of the area around the pit, not the procedure for unloading the fat and bone trucks. As noted above, there is no nexus between the condition of the area around the pit and appellant's accident. Rather, appellant's deposition testimony establishes that the premature release of the truck's center gate caused his accident.
 {¶ 27} In his deposition testimony, appellant indicated that the center gate is held in place by five bars and two pins attached to a safety lever. The employee must stand in the bed of the truck to remove the five bars. When the bars are removed, the two pins continue to hold the center gate in place. Appellant testified that the employee must then raise the safety lever four or five inches so that it can be reached from the catwalk. He testified that this does not cause the two pins to rise from the floor of the truck since there is "a gap of slackness in there, that four or five inches." After raising the safety lever slightly, the employee rides the tailgate to the top of the truck and steps out onto a catwalk. Once on the catwalk, the employee pulls the safety lever and releases the center gate. Releasing the center gate does not always release the load. Appellant testified that depending on the size of the load, there might not be enough pressure on the gate to force it open.
 {¶ 28} The above evidence indicates that at least one of the center gate's two safety restraints is in place whenever the employee is in the bed of the truck. Furthermore, although the employee raises the safety lever four or five inches before ascending to the catwalk, the pins attached to the safety lever remain in the floor of the truck. Finally, even when the employee pulls the safety lever and releases the center gate, the load does not always force the gate open. At the most, a reasonable person considering this evidence could conclude that appellee knew that injury from its unloading procedure was a possibility. However, no reasonable person could conclude that the nature of the unloading procedure was such that appellee knew that injury from the procedure was a substantial certainty.
 {¶ 29} Appellant argues that requiring him to unload the fat and bone truck by himself violated company policy and "was dangerous in and of itself." Appellant relies on Mr. Dunhoft's deposition in which he testified that an employee would never unload the truck by himself if it was his first time unloading a fat and bone truck. However, this was not appellant's first time unloading a fat and bone truck. Rather, it was his first time unloading a fat and bone truck unaided. Since this was not appellant's first time unloading a fat and bone truck, appellee did not violate company policy by requiring him to unload it by himself.
 {¶ 30} Finally, appellant argues this case is "very similar" to the situation in Taulbee, 120 Ohio App.3d 11. There, Mr. Taulbee fell from a scaffold while moving from one area of scaffolding to another. The evidence showed that at the direction of their foreman, Mr. Taulbee and other members of his crew had removed scaffolding boards. In some areas, this left only two eight-inch wide boards in place for employees to work on. In a deposition, the foreman testified that the planking and scaffolding were not safe and that there were never enough planks on a particular level to enable the crew to perform its work safely. Additionally, the evidence showed that prior to the accident, several employees, including members of management, suffered falls or near falls. The company presented evidence that it provided safety harnesses, safety belts, and lanyards. However, several workers testified that there wasn't enough equipment for everybody. Even if the equipment was available, the workers testified that there were no lifelines and no safe areas where they could tie themselves off. For several weeks prior to the accident, the lights in the work area would go out without warning. When this happened, the entire worksite was plunged into total darkness. The evidence showed that the workers complained to their foreman about the lights. The foreman testified that the most critical safety hazard on the job site was the lights.
 {¶ 31} On the day of the accident, Mr. Taulbee had been on the job site only eight days. While moving from one area of scaffolding to another, Mr. Taulbee was attempting to walk on two eight-inch scaffolding boards. Mr. Taulbee was mid-stride when the lights went out, causing him to lose his balance. Although Mr. Taulbee reached for the scaffolding support, he missed it in the dark and fell from the scaffold. The trial court granted summary judgment in favor of the employer. However, the Tenth District Court of Appeals reversed the court's decision, concluding that Mr. Taulbee had presented evidence that, if believed, would permit reasonable minds to come to different conclusions as to the essential issues of the case. Taulbee,120 Ohio App.3d at 13. Addressing the second prong of the Fyffe
test, the court stated:
BMI knew of the risks inherent in working at heights on a construction site, knew that Taulbee was to be working on scaffolding that had planks removed, and knew that at any time the work site could become pitch black. At least one BMI foreman concluded that the level of risk was simply unacceptable. Richard Brickey pulled his crew out until a scaffolding problem was corrected, and he arranged for the lights to be wired directly into a power source so they would not come unplugged.
Id. at 21-22. In the end, the court concluded that "a genuine issue of material fact exists as to whether the environment in which Taulbee was working created such an obvious hazard that BMI management knew that an injury was substantially certain to occur." Id. at 22.
 {¶ 32} We find this case distinguishable from Taulbee. InTaulbee, there were two problems, the scaffolding and the lighting, that together created the dangerous condition. The employer was aware that the workers had altered the scaffolding by removing scaffolding boards. Additionally, the employer was aware of the situation involving the lighting. Here, there is no evidence of alterations to the center gate or to the safety restraints that held the gate in place. Moreover, appellant has not presented any evidence showing that appellee was aware of any problems involving the center gate. In his brief, appellant notes that appellee provided its drivers with safety harnesses and lanyards. He argues that as was the case in Taulbee, the lanyard provided by appellee could not be used when the accident occurred. Specifically, he notes that he could not wear the lanyard in the bed of the truck because the lanyard was only 18 inches long. However, Mr. Forrester and Mr. Dunhoft testified that the safety harness and lanyard were designed to be worn when riding on the tailgate. Additionally, appellant testified that it was his understanding that he was to wear the safety harness and lanyard whenever he was on the tailgate. Appellant presented no evidence that the lanyard was meant to be worn in the bed of the fat and bone truck. Accordingly, the fact that the lanyard could not be used at the time of appellant's accident does not create a genuine issue as to whether appellee knew that injury was substantially certain to occur.
 {¶ 33} Construing the evidence in a light most favorable to appellant, we conclude that no genuine issue of material fact exists as to whether appellee knew that its unloading procedure was substantially certain to result in harm to appellant. Appellant had been trained in the proper procedure for unloading a fat and bone truck and had helped other fat and bone drivers unload their trucks. There had been no prior accidents involving the center gate of a fat and bone truck, and the unloading procedure did not create such an obvious danger that appellee knew that injury from the procedure was a substantial certainty. There is no evidence, direct or circumstantial, that appellee possessed actual knowledge that harm to appellant was substantially certain to occur. See Shreve v. United Elec. Constr. Co., Ross App. No. 01CA2626, 2002-Ohio-3761, at ¶ 49.
 {¶ 34} Because appellant failed to establish the second prong of the Fyffe test, reasonable minds can only conclude that appellee did not commit an intentional tort. Accordingly, we overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] Because this case involves summary judgment, we have relied on appellant's deposition testimony as to the proper procedure for unloading a fat and bone truck. For the most part, appellant's and appellee's descriptions of the procedure are the same. The main difference in their descriptions relates to whether the employee was to raise the safety lever slightly while in the bed of the truck.
[2] As general manager, Mr. Dunhoft oversaw the entire Pittsburgh division, including the substation in Marietta.
[3] Appellant attached a report listing the injuries that occurred at the Marietta plant between January 2000 and October 2004. He also attached several documents entitled "Workers Compensation — First Report of Injury of Illness." These documents do not fit into one of the categories of evidentiary materials listed in Civ.R. 56(C). Moreover, the documents were not incorporated by reference in any affidavit. See Martin v.Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 89,590 N.E.2d 411. Nonetheless, these documents were properly brought to the attention of the trial court by way of Mr. Dunhoft's deposition testimony and were attached as an exhibit thereto.